# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MICHAEL JETER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 16-00054-N** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Jeter has brought this action under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 18, 19).

Upon consideration of the parties' briefs (Docs. 10, 11, 14, 16) and those portions of the administrative record (Doc. 9) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised,[1] the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.

---

[1] With the Court's consent, the parties jointly waived the opportunity for oral argument. (*See* Docs. 17, 20).

# I.   **Background**

On June 4, 2010, Jeter filed an application for a period of disability and DIB with the Social Security Administration ("SSA"),[2] alleging disability beginning July 15, 2010.[3]  After his application was initially denied, Jeter requested a hearing before an Administrative Law Judge ("ALJ") for the SSA's Office of Disability Adjudication and Review, which was held on March 16, 2012.  On April 26, 2012, the ALJ issued an unfavorable decision on Jeter's application, finding him "not disabled" under the Social Security Act and thus not entitled to benefits.  (*See* R. 71 – 79).

On July 23, 2013, the Appeals Council for the Office of Disability Adjudication and Review vacated the ALJ's initial unfavorable decision and remanded Jeter's case to the ALJ for resolution of certain issues.  (R. 83 – 86).  On remand, the ALJ held another hearing on November 5, 2013.  On January 29, 2014, the ALJ issued a second unfavorable decision on Jeter's application.  (R. 8 – 23).  The Commissioner's decision on Jeter's application became final when the Appeals Council denied his request for review of the ALJ's second unfavorable decision on December 22, 2015.  (R. 1 – 5).  On February 10, 2016, Jeter filed this action under § 405(g) for judicial review of the Commissioner's final decision.  (Doc. 1).  *See* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of

---

[2] The Social Security Act's general disability insurance benefits program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).

[3] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured.  42 U.S.C. § 423(a)(1)(A) (2005)." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   <u>Standards of Review</u>

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, we must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v.*

*Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted).  *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").  "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact.  No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted).  *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ….' 42 U.S.C.A. s 405(g) (West Supp. 1982) (emphasis added).  As is plain from the statutory language, this deferential standard of review is applicable only to findings

of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (footnote and some citations and quotation marks omitted)).   This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260  (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).  *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB … requires that the claimant be disabled. 42 U.S.C. §[] 423(a)(1)(E) … A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §[] 423(d)(1)(A) …

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[4]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[5]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th

---

[4] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[5] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

Cir. 1983) (per curiam)).   "These factors must be considered both singly and in combination.   Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).   Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record."   *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987).   *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record.   Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.   In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole."   *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278.  Because the Appeals Council vacated the ALJ's initial unfavorable decision, the Court reviews the ALJ's second unfavorable decision issued January 29, 2014, as the Commissioner's final decision.  "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).  If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ.  *See id.* at 1324.

## III.   <u>Analysis</u>

At Step One, the ALJ determined that Jeter had not engaged in substantial gainful activity since the alleged disability onset date, July 15, 2010.  (R. 13).  At Step Two, the ALJ determined that Jeter had the following severe impairments: depression and borderline intellectual functioning.  (R. 14).  At Step Three, the ALJ found that Jeter did not have an impairment or combination of impairments that meets or equals the severity of one of the specified impairments in the relevant Listing of Impairments.  (R. 14 – 15).

At Step Four,

the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do

despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

The ALJ determined that Jeter had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant must have no exposure to dangerous machinery or unprotected heights. The claimant can understand short and simple instructions, but is unable to do so with detailed or complex instructions.  The claimant can do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks.  The claimant can have no more than occasional, casual contact with the general public.  The claimant can deal with changes in the work place, if introduced occasionally and gradually."  (R. 15 – 16).

Based on this RFC, the ALJ determined that Jeter was unable to perform

any past relevant work.  (R. 21).  At Step Five, the ALJ, after taking testimony from a vocational expert, found that there exist significant numbers of jobs in the national economy that Jeter can perform given his RFC, age, education, and work experience.  (R. 22 – 23).  Thus, the ALJ found that Jeter was not disabled under the Social Security Act.  (R. 23).  Jeter claims that the ALJ committed reversible error in his consideration of various medical opinions and other record evidence.

Evidence considered by the Commissioner in making a disability determination may include medical opinions.  *See* 20 C.F.R. § 404.1527(a)(2).  " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' "  *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians."  *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. Sept. 26, 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)).  "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical

evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization.   These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. Sept. 30, 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)).

The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *E.g., Bloodsworth*, 703 F.2d at 1240.  However,

> the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir.1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179.

"A 'treating source' (i.e., a treating physician) is a claimant's 'own physician, psychologist, or other acceptable medical source who provides[], or has provided[],[ the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant].' " *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 (11th Cir. 2006) (per curiam) (unpublished) (quoting 20

C.F.R. § 404.1502).  "Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.' "  *Winschel*, 631 F.3d at 1179 (quoting *Lewis*, 125 F.3d at 1440).  That is so because treating sources are likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).  "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'  With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so."  *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted).  *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings.  Further, the Secretary may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)).  An ALJ's failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician is reversible error.  *Lewis v. Callahan*, 125 F.3d at 1440 (citing *MacGregor*, 786 F.2d at 1053).

Treating psychiatrist Dr. David Hodo submitted medical opinions on three

separate occasions, which the ALJ summarized as follows:

> In addition to supplementing the record with his progress notes, Dr. Hodo also completed two medical source opinion forms with the first dated January 10, 2012 (Exhibit 11F, pages 2, 3). The form asked the provider to identify the particular medical or clinical findings, which support the assessment of any limitations. The form further indicates the degree of limitations, starting with none and ending with extreme for no useful functioning. In his completion of the January 10, 2012 form, Dr. Hodo assigned marked (seriously interfered with ability to function) or extreme to all spheres. Moreover, on the question for effect of medication on the claimant's ability to function, Dr. Hodo commented that the claimant's [sic] was off medication and opined that medication had greatly helped in the past.

> In his completion of the second medical source opinion dated September 10, 2013, Dr. Hodo assigned four extremes rather than the six referenced in the 2012 form. In addition, he made no reference to medication, other than to indicate there were none (Exhibit 14F). Additionally, on June 8, 2012, in response to the claimant's representative's request for comments to submit to the Appeals Council, Dr. Hodo opined that the claimant had significant depression and is not allowed to work (Exhibit 13F).

(R. 19).

The ALJ explained the weight given to Dr. Hodo's treatment notes and opinions, and the reasons therefor, as follows:

> …Dr. Hodo's records consist of progress notes presumably entered on the day and/or time of treatment. Furthermore, it is without question that he is established as a long-term treating source for the claimant and, as such, is afforded significant weight. However, because his assessments of January 10, 2012, June 8, 2012 and September 10, 2013, are inconsistent with the evidence as a whole and are inconsistent with the claimant's activities, he is afforded only partial weight for the assessment evidence. Moreover, the lack of insight, analysis, and discussion of the claimant's work in the treatment reports, strongly indicated Dr. Hodo may have not had accurate information with which to base his assessments. For example, though the claimant reported that he was laid off from his job in 2009 due to the economy, he quickly found other employment with no differential from his depression diagnosis. Also, when the claimant reported on

January 25, 2011, that it was not safe to work full time, the comment was quite ambiguous in that on this date he also discussed the denial of his claim, leaving one to wonder if the statement referred to an inability to work or a desire to refrain from engaging in sustained work activity which could adversely affect the claim.  A further example is the claimant's report on December 11, 2012, that on his lawyer's advice he could not marry his fiancé because the marriage would affect his claim for disability benefits.  Notably, the claimant's sole employee for his business is also his fiancé (*see* Exhibit 11D).  In addition, as noted in Exhibit 1D, the claimant's application is for disability insurance benefits and such benefits are not subjected to spousal deeming nor are there asset limitations.  Moreover, even if the claimant had applied for supplemental security income (SSI), the agency's program under which spousal deeming and/or assets are countable, Exhibit 15D revealed the claimant's monthly primary insured amount far exceeds the allotment ceiling for payment under SSI.  Furthermore, Dr. Hodo's progress note of September 10, 2013, the same date as the second assessment, under the spectrum of adversity/benefit reflected that the claimant was getting better.  Conversely, Dr. Hodo's findings that the claimant has marked limitations that seriously interfere with his ability to function and limitations of no useful functioning are not supported by objective findings; and the issue of a claimant's ability to work is reserved to the Commissioner (*See* SSR 96-2p and SSR 96-5p).

The claimant's records from Dr. Collins and the Maplesville Clinic, Dr. Connolly and Dr. Marks, his visit to the emergency room at Vaughn Regional Medical Center and his records from Dr. Hodo through June 15, 2010, are prior to the claimant's alleged onset date.  Agency guidance requires me to view the evidence from a linear perspective. Therefore, I am required to look at the period leading up to the alleged onset and not start the analysis with the date of the alleged onset.  In this instance, the claimant's first diagnosis of his depression impairment occurred within the records of Dr. Collins in 2002. However, the record shows the claimant worked without interruption, except for layoffs and quitting, and enjoyed substantial gainful activity up to the point he voluntarily quit his job.

Accordingly, I find that the linear evidence of record fails to provide any evidence to suggest that the claimant's impairments caused any limitation in his ability to work during the period leading up to the alleged onset. (See Exhibits 3D, 6D, 15D, 17D).

(R. 19 – 20).

Jeter asserts that the ALJ "misrepresented the evidence and improperly weighed the opinions" in assigning only partial weight to Dr. Hodo's opinions. (Doc. 11 at 6). As his first example of how the ALJ allegedly "misrepresented the evidence," Jeter points out that, where the ALJ stated "Dr. Hodo opined that the claimant … is not allowed to work" (R. 19 (citing SSA Ex. 13F), Dr. Hodo's opinion actually stated that Jeter "is not able to work." (R. 462 [SSA Ex. 13F], duplicate at R. 148). The Commissioner's brief attributes this discrepancy to the ALJ allegedly misreading Dr. Hodo's note, asserting that "Dr. Hodo's handwriting is difficult to read." (Doc. 14 at 4 n.2).[6] Read in context, any implications in the discrepancy[7] are minimal and warrant negligible consideration.

Jeter also takes issue with the ALJ's assertion that "Dr. Hodo's findings that the claimant has marked limitations that seriously interfere with his ability to function and limitations of no useful functioning are not supported by objective findings[,]" complaining that "[t]here are no objective tests available to measure depression" and, thus, "[t]his is the reason one must seek the advice of a trained mental health professional, most preferably a psychiatrist." (Doc. 11 at 6). First, Jeter cites no authority to support these statements. Second, the ALJ was <u>not</u> stating that objective "findings" (as opposed to just "tests," since Jeter is insisting on specificity of language) did not support a diagnosis of depression (indeed, the ALJ

---

[6] The undersigned does not find Dr. Hodo's handwritten note difficult to read. It appears more likely that the ALJ was paraphrasing based on the reasonable inference that, because Dr. Hodo believed Jeter was "not able to work," he would not, in his professional capacity as Jeter's psychiatrist, "allow" Jeter to work.

[7] For his part, Jeter suggests none.

found depression to be a severe impairment at Step Two).  Rather, the ALJ was stating that objective findings did not support the severe limitations Dr. Hodo opined were caused by Jeter's mental impairments.  Third, Jeter cites no authority indicating that mental health professionals are exempt from supporting their opinions with objective evidence, and the Eleventh Circuit Court of Appeals has repeatedly found a lack of objective support to be a valid consideration in weighing the opinions of treating mental health professionals.[8] [9]

---

[8] *See Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 878 (11th Cir. 2014) (per curiam) (unpublished) ("We also conclude that adequate evidence supported the ALJ's decision to give minimal weight to the opinions of Dr. DeLuca, Harrison's psychiatrist … Dr. DeLuca described Harrison as 'totally and permanently disabled' because she suffered from bipolar disorder with psychotic features such as delusions. He did not explain, however, why this diagnosis prevented her from performing any job-related activities. Additionally, **Dr. DeLuca's records did not contain any objective findings regarding Harrison's limitations or examination results supporting his conclusions.  Because of this lack of evidentiary support**, the ALJ was not required to give great weight to Dr. DeLuca's conclusory statements regarding Harrison's ability to work." (emphasis added); *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (unpublished) ("Here, there is substantial evidence supporting the ALJ's conclusion that there was good cause to afford more weight to the opinion of Dr. Goren, a nonexamining board-certified neurologist, than to the opinions of Dr. Vernacchio and Dr. Kantor, who were Forsyth's treating physicians. As explained by the ALJ and the magistrate judge, Vernacchio did not conduct a proper neurological exam of Forsyth, and Kantor relied too significantly on Forsyth's subjective reports."); *Anderson v. Comm'r, Soc. Sec. Admin.*, 441 F. App'x 652, 653 (11th Cir. 2011) (per curiam) (unpublished) ("With respect to the opinion of Dr. Beaty, a psychiatrist who treated Anderson for two years, the ALJ provided specific, adequate reasons for not giving his opinion controlling weight, and those reasons were supported by substantial evidence. For example, although Beaty stated that his functional assessment of Anderson was based on two years of clinical observation, **his findings were not supported by objective evidence**: his treatment notes for Anderson primarily provided only the diagnosis or simply documented Anderson's subjective complaints during each visit." (emphasis added)); *Cummings v. Comm'r of Soc. Sec.*, 165 F. App'x 809, 811 (11th Cir. 2006) (per curiam) (unpublished) ("[B]ecause the reports of the treating physician and psychologist do not contain objective findings to support their conclusions, the ALJ's failure to accord weight to their conclusions is supported by substantial evidence and based on correct legal standards.").

[9] As he correctly noted in his decision, the ALJ was not required to accept Dr. Hodo's conclusory opinion that Jeter was "not allowed"/"able to work."  Such opinions are not

Finally, Jeter challenges the ALJ's assertion that, "though the claimant reported that he was laid off from his job in 2009 due to the economy, he quickly found other employment with no differential from his depression diagnosis[,]" which the ALJ cited as one example of why he believed "the lack of insight, analysis, and discussion of the claimant's work in the treatment reports, strongly indicated Dr. Hodo may have not had accurate information with which to base his assessments." Jeter takes issue with this assertion for the following reasons: "2009 was prior to the alleged onset date, so his condition at that time is not relevant to the question of disability. Furthermore, the next treatment note, dated February 17, 2009, indicates he was working again. (Tr. 366). Clearly Dr. Hodo was well aware that Mr. Jeter had quickly found other employment." (Doc. 11 at 6).

First, the ALJ's decision noted that "[a]gency guidance requires [him] to view the evidence from a linear perspective" and therefore required him "to look at the period leading up to the alleged onset and not start the analysis with the date of the alleged onset." (R. 20). Jeter offers no argument or authority indicating that this statement is incorrect – indeed, he makes no mention of it at all.[10] Second, the

---

"medical opinion" as generally defined in the Social Security regulations, *see* 20 C.F.R. § 404.1527(a)(2), "but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." *Id.* § 404.1527(d) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability … A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). *See also Forsyth*, 503 F. App'x at 894 (" 'A statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the Commissioner] will determine that [the claimant is] disabled.' [20 C.F.R.] §§ 404.1527(d)(1), 416.927(d)(1).")

[10] *Cf. Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012) (per curiam) (unpublished) ("The ALJ considered the evidence concerning the intensity, persistence, and

treatment note Jeter cites merely states that Jeter was "back to work" (R. 366), which does little to address the ALJ's overall concern that Dr. Hodo's treatment notes lacked "insight, analysis, and discussion of the claimant's work." Third, even counting this as a strike against the ALJ's reasoning, Jeter has failed to convince the undersigned that the ALJ's decision to assign only "partial weight" to Dr. Hodo's opinions is not based on "clearly articulated" "good cause" supported by "substantial evidence."

In addition to arguing that the ALJ erred in weighing Dr. Hodo's opinions,[11] Jeter takes issue with the ALJ's statement, made at Step One, that "the claimant's ability to operate a successful business with employees shows the claimant is far more capable than what he has alleged" (R. 13), asserting that the ALJ overstated the evidence. The fact that Jeter made it past Step One shows that any error caused by this general observation was harmless, and the ALJ made more detailed

---

functionally limiting effects of Douglas's symptoms, as well as medical signs and laboratory findings, when evaluating Douglas's credibility ... He properly applied this circuit's pain standard, taking into account evidence during the relevant period. **He also considered evidence from before and after the relevant period that would have bearing on Douglas's disability during the relevant time.** The ALJ then properly found that no objective evidence indicated that Douglas was disabled between April and December of 1999 and that Douglas's subjective claims of pain were not credible. Substantial evidence supports the ALJ's findings." (emphasis added)).

[11] Jeter represents his sole claim of error as being that "[t]he ALJ erred in rejecting the opinion of the treating psychiatrist, David W. Hodo, M.D." The only legal authorities he cites, tucked at the end of the brief, discuss, in general terms, how the Commissioner is to consider the opinions of treating physicians. Jeter's substantive argument with regard to the ALJ's consideration of Dr. Hodo's opinion, however, spans less than a page in length. The remainder of his substantive arguments attacking the ALJ's decision concern previously unidentified claims that the ALJ (1) erred in assigning great weight to the opinions of two nontreating medical professionals, and (2) misconstrued and gave undue consideration to evidence indicating that Jeter owned a business. Jeter fails to explain how either of these other claims ties in to the ALJ's consideration of Dr. Hodo's opinions; by all accounts, they appear to be additional stand-alone claims of error.

findings regarding the credibility of Jeter's subjective complaints in Step Four, which Jeter does not challenge here. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

Jeter also argues the ALJ "misrepresented the evidence again" in assigning "great weight" to the opinions of consultative examining psychologist Dr. Jennifer Jackson and a non-examining state agency consultant Dr. M. Hope Jackson.  He argues the examining psychologist's report "does not merit great weight" because her findings that Jeter had only mild to moderate limitations in work-related functioning are inconsistent with his reported activities of daily living.  Per Jeter, "[b]ecause depression, or dysthymia, creates lack of interest, simply knowing how to do daily activities does not mean there are no limitations in actually doing those activities." (Doc. 11 at 7).  This Court cannot reweigh the evidence or substitute its judgment for the Commissioner's, let alone for a medical professional.

Jeter correctly points out that the ALJ misstated the record in remarking that Dr. Hope Jackson had reviewed, as part of "the evidence of record, the consultative report and findings by Dr. Jennifer Jackson," before rendering her opinion in December 2010, when in fact Dr. Jennifer Jackson did not perform her consultative examination of Jeter until 2012 (R. 20-21, 391-395).[12]  At most, this is harmless error, as the ALJ also indicated that he compared the two non-treating

---

[12] The undersigned disagrees that the ALJ misidentified Dr. M. Hope Jackson as a consultative examiner.  The ALJ's statement that "the examiner's analysis is supported by diagnostic testing and personal contact with the claimant" was made in the course of the ALJ's assignment of weight to both consulting physicians, and it is reasonably clear that use of the term "examiner" was meant to refer to Dr. Jennifer Jackson.  (*See* R. 21).

professionals' opinions and found them consistent.  (*See* R. 21).

Jeter is also correct to complain about the ALJ's reasoning in assigning "great weight" to the non-treating professionals' opinions for the stated reason that they are "consistent with the above stated residual functional capacity."  (R. 21). Such reasoning gets the process entirely backward, since an RFC is to be "assess[ed] based on all the relevant evidence in [a claimant's] case record."  20 C.F.R. § 404.1545(a)(1), (3).  Thus, medical opinions, which are relevant evidence, *see* 20 C.F.R. §§ 404.1512(b)(1)(ii), 404.1527(a)(2), are to be examined and weighed as part of the RFC assessment, rather than as *post hoc* justification for an RFC predetermined without consideration of "all the relevant evidence."  In other words, at Step Four the evidence is supposed to justify the RFC, not *vice versa*.

Further, the undersigned is troubled that the ALJ apparently found the non-treating professionals' opinions reliable because "their role is not to provide treatment to the claimant, but rather, offer an objective analysis."  (R. 21).  This observation, suggesting a belief that a treating physician's opinion is automatically rendered suspect by the very fact of the treating relationship, runs counter to longstanding SSA regulations and circuit precedent stating that a treating source's opinion is generally entitled to substantial or considerable weight, and in some cases even controlling weight.  *See, e.g.*, 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have

obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). The undersigned is unaware of any precedent approving "long-standing treatment relationship" as "good cause" to discredit a treating physician's opinion.

Nevertheless, the ALJ fulfilled his duty to state with particularity the weight given to the non-treating medical opinions and the reasons therefor, and the ALJ's decision sufficiently indicates that these opinions were considered in conjunction with the objective evidence of record. Moreover, an ALJ may properly afford more weight to the opinion of a non-treating source than to that of a treating physician so long as he has shown sufficient "good cause" to assign less than substantial weight to the treating physician's opinion. *See Jones v. Bowen*, 810 F.2d at 1005 ("Jones contends that the ALJ erred by crediting the reports of non-examining, non-treating physicians. It is not improper, however, for an ALJ to consider such reports—as long as the opinion of the treating physician is accorded proper weight. And, as we stated before, the Secretary in this case stated 'good cause' for not according Jones's treating physician's opinion the 'substantial weight' normally required. Thus, the Secretary did not err."); *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam) (unpublished) ("Here, there is substantial evidence supporting the ALJ's conclusion that there was good cause to afford more weight to the opinion of Dr. Goren, a nonexamining board-certified neurologist, than to the opinions of Dr. Vernacchio and Dr. Kantor, who were Forsyth's treating physicians.").

In the final analysis, the undersigned finds that the ALJ's decision meets "substantial evidence" scrutiny, which requires this Court to affirm the decision even where the evidence preponderates against it.[13]   Accordingly, the Court **OVERRULES** Jeter's claims of reversible error[14] and finds that the Commissioner's final decision denying Jeter benefits is due to be **AFFIRMED**.

## IV.   Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's December 22, 2015 final decision denying Jeter's application for a period of disability and DIB is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this Order and

---

[13] *Cf. Moore*, 405 F.3d at 1213 ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] ... even if the evidence preponderates against' the decision." (quoting *Bloodsworth*, 703 F.2d at 1239)) (footnote omitted)); *Jacobus v. v. Comm'r of Soc. Sec.*, No. 15-14609, 2016 WL 6080607, at *1-2 (11th Cir. Oct. 18, 2016) (per curiam) (unpublished) ("As an initial matter, there are a number of factual errors in the ALJ's opinion ... [However, w]here an ALJ makes a factual error, the error will be considered harmless if it is clear that the error did not affect the ALJ's ultimate determination. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). The ALJ's factual errors are harmless, as substantial evidence supports the ALJ's determination that Jacobus was not entirely credible.").

[14] Generally, claims of error not raised in the district court are deemed waived.  *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 – 16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court ... Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.").

Federal Rule of Civil Procedure 58.

     **DONE** and **ORDERED** this the 4th day of November 2016.

                                      */s/ Katherine P. Nelson*
                                      **KATHERINE P. NELSON**
                                      **UNITED STATES MAGISTRATE JUDGE**